UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDUARDO VEGA HERNANDEZ,

   Petitioner,

v.            Case No. 3:26-cv-8-MMH-MCR

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

   Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Eduardo Vega Hernandez, an immigration detainee, filed a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1; Petition) on January 5, 2026. Hernandez is currently in the custody of U.S. Immigration and Customs Enforcement (ICE) in Folkston, Georgia.[1] The U.S.

---

[1] When Hernandez initiated this case, he was detained at Baker Correctional Institute in Sanderson, Florida, which is located within this Court's jurisdiction. Because Hernandez was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer. See Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); see, e.g., Elcock v. Streiff, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical

Attorney General (Respondent) filed a Response (Doc. 10; Response). And the Warden, North Florida Detention Center filed a Motion to Correct the Docket (Doc. 8), arguing that while the docket lists him as a Respondent in this case, the Petition does not. Based upon a review of the parties' filings, the Court finds that a reply is unnecessary, and the Petition is due to be granted.

## II. Background

Hernandez, a citizen of Cuba, was paroled into the United States on November 22, 2002. Doc. 10-2 at 6. ICE took Hernandez into custody on May 13, 2025, and an immigration judge ordered him removed on June 26, 2025. See Doc. 10-2 at 13-16; see also Petition at 1-2; Response at 2 (noting that Hernandez waived his right to appeal so his removal order became final the same day it was entered—June 26, 2025).

In the Petition, Hernandez argues that he has been in ICE custody for over 180 days and "ICE is not likely to remove [him] in the near future." Petition at 5-6. As relief, he requests immediate release. See id. at 6.

---

custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

2

### III.    Analysis

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543-44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to

3

view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, Hernandez was already in ICE custody when his order of removal became final on June 26, 2025, and he filed this case 193 days later on January 5, 2026. Respondent acknowledges that Hernandez filed this case more than 6 months after his order of removal became final, but Respondent argues that his "period of detention should be tolled because [he] has refused to cooperate with ICE to effectuate his removal." Response at 7. Specifically, Respondent contends that Hernandez "has refused to sign the necessary paperwork to

4

assist ICE to secure his removal." Id. To support that contention, Respondent submits the following evidence:

1. A "Notice of Removal" dated July 1, 2025, advising Hernandez of ICE's intent to remove him to Mexico. Doc. 10-2 at 18. On the line titled "Signature of Alien," there is a handwritten note: "refused to sign." Id.

2. A "Warning for Failure to Depart" dated February 19, 2026, citing section 243(a) of the Immigration and Nationality Act, advising Hernandez of potential criminal penalties. Doc. 10-2 at 20. The form is stamped "Refused to Sign" under the section marked for the "Alien's Signature." Id.

3. An "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal" dated February 19, 2026, that is stamped "Refused to Sign" on the line marked for the "Alien's Signature." Doc. 10-2 at 21. Notably, this form provides Hernandez 30 days to complete specific tasks to assist with his removal. Id.

4. A "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)" dated March 6, 2026, with a "Proof of Service" dated March 10, 2026, indicating that Hernandez "Refused to Sign" acknowledging his receipt of the Notice. Doc. 10-2 at 23-24. The Notice states that Hernandez was advised on February 19, 2026, "of specific requirements to complete" and he was "given 30 days to comply . . . . As you have failed to sign, you have failed to comply with your obligation and are acting to prevent your removal from the United States." Id. at 23.

Section 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §

5

1231(a)(1)(C). When addressing a <u>Zadvydas</u> claim, courts have applied

§ 1231(a)(1)(C) differently:

> Many courts conduct an analysis using the burden-shifting framework from <u>Zadvydas</u>, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under <u>Zadvydas</u> altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the <u>Zadvydas</u> standard.

<u>Glushchenko v. U.S. Dep't of Homeland Sec.</u>, 566 F. Supp. 3d 693, 705–06

(W.D. Tex. 2021) (footnotes omitted). The Eleventh Circuit previously said that

the six-month period may be tolled if the alien "'acts to prevent [his] removal'"

by filing litigation "challeng[ing] issues related to his removal order and his

post-removal period detention." <u>Akinwale</u>, 287 F.3d at 1052 n.4 (quoting 8

U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit recognized that "if

the removal period was extended by operation of § 1231(a)(1)(C), then ICE can

continue to detain [the petitioner] because 'the keys to [the petitioner's]

freedom [are] in his pocket and [he] could likely effectuate his removal by

providing the information requested,' so he 'cannot convincingly argue that

there is no significant likelihood of removal.'" <u>Singh v. U.S. Att'y Gen.</u>, 945 F.3d

1310, 1314 (11th Cir. 2019) (quoting <u>Pelich v. Immigration & Naturalization</u>

<u>Serv.</u>, 329 F.3d 1057, 1060 (9th Cir. 2003)); <u>see</u> <u>Vaz v. Skinner</u>, 634 F. App'x

6

778, 782 (11th Cir. 2015)[2] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); Oladokun v. U.S. Att'y Gen., 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting Zadvydas, 533 U.S. at 701).

Here, Respondent does not show that Hernandez's "failure to sign" was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The documents that Hernandez refused to sign are notices to Hernandez, not applications for travel documents or forms that would otherwise appear to assist in his removal. Moreover, the February 19, 2026 "Instruction Sheet to Detainee Regarding Requirement to Assist in Removal" provides Hernandez with 30 days to comply—a deadline which had not passed at the time the Response was filed

---

[2] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

or at the time ICE issued Hernandez the "Notice of Failure to Comply Pursuant to 8 CFR 241.4(g)" on March 6, 2026. Moreover, Respondent recognizes that "the six-month period [under Zadvydas] concluded on or about December 23, 2025." Response at 5. Thus, prior to the expiration of the six-month period, the only form Hernandez "refused to sign" was the Notice of Removal advising Hernandez of ICE's intent to remove him to Mexico. With respect to the other three forms identified by Respondent, the six-month period had already expired when ICE presented Hernandez with those forms; thus, there effectively was no time left to toll because the period had already expired.

Respondent provides no explanation of how Hernandez's failure to sign the forms impeded ICE's ability to remove him. And this case is not comparable to the non-binding cases Respondent cites in which the petitioners affirmatively acted in ways that actually prevented ICE from removing them. See Oladokun, 479 F. App'x at 896–97 (absconding for five years after his final order of removal was entered; becoming combative when placed on an airplane to be removed and then trying to flee; and refusing to complete necessary forms on several occasions or submit to fingerprinting); Lema v. I.N.S., 341 F.3d 853, 857 (9th Cir. 2003) (continual failure to cooperate, including telling the Ethiopian government that he was "Eritrean" when he was actually Ethiopian and refusing to provide requested documents); Olajide v. B.I.C.E., 402 F. Supp. 2d 688, 693–94 (E.D. Va. 2005) (demanding dental surgery prior to being

8

removed, yet refusing the government's offer of free surgical treatment by a specialist); Riley v. Greene, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001) (refusing to name any country of choice for deportation; failing to contact other countries to seek immigration status and/or renounce his citizenship for a significant period of time; and refusing to assist in completing travel arrangements); Sango-Dema v. Dist. Dir., I.N.S., 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (refusing to provide his passport and birth certificate, communicate with officials at the embassy of his country of origin, or complete any necessary applications to facilitate his removal).

Respondent does not even suggest that Hernandez made any affirmative misrepresentations or refused to accurately provide ICE with any requested information, refused to complete necessary forms, physically interfered with his impending removal, or otherwise constructed a ploy to prevent his removal. The only evidence Respondent provides are the referenced forms that Hernandez refused to sign. Without more, the Court cannot find that Hernandez's refusal to sign the paperwork provided warrants tolling of the six-month period as requested by Respondent. As such, the Court finds Hernandez's six-month period expired prior to filing this case.

Thus, the Court must consider whether Hernandez has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale, 287 F.3d at 1052. In the Petition,

Hernandez asserts that he has been detained beyond the six-month period and "ICE is not likely to remove [him] in the near future." Petition at 5-6. Now, he has been detained for more than eight months following his order of removal, and ICE still has been unable to remove him.

Given the record, the Court finds that Hernandez has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, the burden shifts to Respondent to "respond with evidence sufficient to rebut [Hernandez's] showing." <u>Akinwale</u>, 287 F.3d at 1052. But Respondent fails to do so. Indeed, the Response does not even address whether there is a significant likelihood of removal in the reasonably foreseeable future.

Given the opportunity to provide argument and evidence to show that Hernandez's removal is reasonably foreseeable, Respondent implicitly declined to do so. Thus, Hernandez is entitled to release from detention under <u>Zadvydas</u>. Accordingly, it is

**ORDERED**:

1.    Hernandez's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** on his <u>Zadvydas</u> claim. Respondent shall release Hernandez **within 24 hours** of this Order.

2.    The Motion to Correct the Docket (Doc. 8) is **DENIED as moot**.

10

3.    The **Clerk of Court** is directed to enter judgment granting the Petition on the <u>Zadvydas</u> claim, terminate any pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 19th day of March, 2026.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 3/18
c:
Eduardo Vega Hernandez
Counsel of Record